UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEITH H., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:22-cv-00092-NT |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred in assessing a mental residual functional capacity (RFC) unsupported by substantial evidence. *See* Statement of Errors (ECF No. 11) at 3-13. I agree and recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

### I. Background

The Plaintiff alleged disability commencing on January 16, 2016. *See* Record at 16. The Appeals Council vacated an initial unfavorable decision and remanded the case to the ALJ with directions that, among other things, he give further consideration to the Plaintiff's maximum RFC. *See id.* Post-remand, the ALJ found, as a threshold matter, that the Plaintiff had engaged in substantial gainful activity (SGA) from July 12, 2019, to November 3, 2019, but that there had been continuous

1

twelve-month periods during which he had not engaged in SGA, which the ALJ addressed in his remaining findings. *See* Record at 18-19. By definition, a claimant engaging in SGA is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(i). With respect to the remaining non-SGA time period, the ALJ found that the Plaintiff (1) had the severe impairments of type II diabetes mellitus with some peripheral neuropathy, obesity, left knee degeneration, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and alcohol abuse in remission, *see* Record at 19; (2) could perform light work as defined in 20 C.F.R. § 416.967(b) with standing, walking, and postural limitations and could understand, remember, and carry out simple (one- to three-step) repetitive tasks, maintain concentration, persistence, and pace for two-hour blocks of time with no limitation in social interactions with the public, co-workers, or supervisors, and adapt to routine workplace changes, *see id.* at 22; (3) could perform jobs existing in significant numbers in the national economy, *see id.* at 30; and (4) therefore was not disabled, *see id.* at 31. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see* Record at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek*

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The Plaintiff argues that the ALJ overstepped his bounds as a layperson in crafting a mental RFC unsupported by any expert opinion of record. *See* Statement of Errors at 4-11. The Commissioner counters that the ALJ made a permissible commonsense judgment based on evidence understandable to a layperson, including the results of mental status examinations, jobs worked, and daily activities. *See* Opposition (ECF No. 13) at 1-10. I conclude that the record in this case suggested more than a mild impairment and was too ramified to permit a layperson's assessment.

"[T]he general rule" in the First Circuit "is that an expert is needed to assess the extent of functional loss." *Roberts v. Barnhart*, 67 F. App'x 621, 622-23 (1st Cir. 2003). Accordingly, "[a]n ALJ may determine RFC only if the evidence suggests a relatively mild impairment posing, to the layperson's eye, no significant restrictions." *Id.* at 623 (cleaned up). "[A]n expert's RFC evaluation is required where the record is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment." *Id.* (cleaned up).

3

Applying that rule in *Roberts*, the First Circuit held that "the record as a whole" was sufficiently ramified to require expert RFC guidance when it included evidence that the "claimant had difficulties with (1) maintaining attendance, (2) following through with a schedule, and (3) leaving her house when . . . depressed," indicating "*more* than a mild impairment which impose[d] *more* than slight restrictions on claimant's mental ability to function." *Id*. *See also, e.g., Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17-19 (1st Cir. 1996) (characterizing the record before the ALJ as sufficiently ramified to require expert RFC guidance in view of "the illegibility of non-trivial parts of the medical record, coupled with identifiable diagnoses and symptoms that seem to indicate more than mild impairment").

In this case, the ALJ himself indicated that he did not view the Plaintiff's depression, anxiety, and ADHD as mild. He rejected the opinion of an agency nonexamining consultant that the Plaintiff had no more than mild mental functional limitations, explaining that "the subsequently received evidence describes ongoing mental health treatment with variable depressive and anxious symptoms associated with stressors," and "[t]he complete medical record supports a finding of more than minimal functional limitations." Record at 29. He also assessed moderate limitations in the Plaintiff's abilities to (1) understand, remember, or apply information, (2) concentrate, persist, or maintain pace, and (3) adapt or manage himself. *Id*. at 21.

Moreover, as the ALJ noted, one treating mental health provider stated in April 2017 that the Plaintiff had "some 'serious' limitations in functioning" and

another in November 2017 that he had "'fair' to 'impaired' functioning in most areas of functioning" and "would be absent from work one day per month," *id*. at 27, and two case managers completed function reports in 2016 indicating that the Plaintiff had problems focusing, concentrating, and completing tasks, *see id*. at 28. While the ALJ gave these opinions and function reports partial to little weight, *see id*. at 27-28, they also suggest that the record was too ramified to permit a commonsense finding of the Plaintiff's mental RFC.

The ALJ explained that he concluded that the Plaintiff "remained able to perform essentially simple work with the ability to adapt to routine work changes" because, while the medical evidence of record described "depressive and anxious symptoms in addition to ADHD" and "variable mental health symptoms with intermittent exacerbation due to stressors, . . . objective mental status examinations describe[d] generally intact cognitive and social functioning" and mental health treatment had "also been generally conservative with recent stability in mood associated with resolution of [child] custody issues." *Id*. at 25. Yet, the ALJ did not explain how this evidence supported a finding that the Plaintiff remained capable of performing simple work, maintaining concentration, persistence, or pace for two-hour blocks of time, and adapting to routine workplace changes, with no other mental limitations.[1]

---

[1] The Commissioner observes that this Court recognized in *Priest v. Colvin* that ALJs may rely on reports of normal mental status examinations and argues that the "ALJ's explanation and the evidence he relied on is commensurate with that which supported the RFCs" in *Scott R. v. Kijakazi* and *Sarah B. v. Saul*. *See* Opposition at 3-4, 8. *Priest* cuts in the Plaintiff's favor, and *Scott R.* and *Sarah B.* are distinguishable. While the Court in *Priest* observed that "reports of normal mental status upon examination . . . are not the type of raw medical data that a layperson is prohibited to evaluate," it concluded that the ALJ erred in finding no severe mental impairment after rejecting "uniform

5

As the Commissioner notes, "[a]lso key to the RFC assessment was the fact that [the] Plaintiff 'has been able to perform unskilled work during the alleged period of disability including work at the level of substantial gainful activity.'" Opposition at 6 (quoting Record at 21). However, in these circumstances, that reliance was misplaced.

The ALJ noted that, in addition to working at a restaurant at SGA level for a four-month period in 2019, the Plaintiff had worked part-time as a bus driver since the first quarter of 2019, although those earnings did not rise to SGA level through the end of 2020. *See* Record at 18-19. The ALJ described the Plaintiff's ability to work both at the restaurant and as a bus driver in August 2019, while managing the "significant stressor" of efforts to retain custody of his children, as "support[ing] a finding that [his] mental health issues did not prevent him from sustaining the mental demands of simple work." *Id.* at 26.

The ALJ added that in 2020, the Plaintiff's mood "continued to improve as two of his children returned home," during which time he "continued to work on a part-time basis driving a bus" with no evidence of "significant difficulties"; "[o]n the contrary," reporting "that he was working up [to] 16 to 27 hours per week and was trying to increase his hours at work." *Id.* at 26 (citations omitted). The ALJ concluded

---

professional opinions to the contrary." *Priest*, No. 1:15-cv-00379-JHR, 2016 WL 7335583, at *2-3 (D. Me. Dec. 16, 2016). The ALJs in *Scott R.* and *Sarah B.* relied primarily on experts' functional capacity opinions in assessing claimants' mental RFC. *See Scott R.*, No. 1:21-cv-00067-GZS, 2022 WL 391690, at *3, *5 (D. Me. Feb. 9, 2022) (rec. dec.), *aff'd*, 2022 WL 603033 (D. Me. Mar. 1, 2022); *Sarah B.*, No. 2:19-cv-00267-LEW, 2020 WL 2549250, at *3 (D. Me. Apr. 23, 2020) (rec. dec.), *aff'd*, 2020 WL 2529353 (D. Me. May 18, 2020).

that the Plaintiff's "intact activities of daily living including managing independent child care responsibilities while working" were inconsistent with total disability, instead "support[ing] a finding that the [Plaintiff] can sustain the physical and mental demands of work within the limitations and restrictions" assessed. *Id.* at 26-27.

As counsel for the Commissioner observed at oral argument, the ALJ did not need a medical license to determine that this work activity supported an inference that the Plaintiff retained the mental capacity for simple work and was not too anxious to work around other people. Yet, the ALJ made no finding that the Plaintiff worked from his alleged onset date of disability in 2016 through the end of 2018, *see* Record at 18-19, and he recognized that the Plaintiff's mental status during that time period was more nuanced, *see id.* at 25-26 (finding that the Plaintiff's "difficulties with concentration and attention at the application period support an assessment of some mental functional limitations" and that "treatment notes over the next several years describe gradual improvement in the [Plaintiff's] mood and cognitive functioning, including concentration and attention").

Accordingly, to the extent that the ALJ relied on the Plaintiff's work commencing in 2019 to make a commonsense judgment that he retained the capacity, as of his alleged onset date of disability in 2016, to "understand, remember, and carry out simple (one-to-three step) repetitive tasks," "maintain concentration, persistence, and pace for two hour blocks of time with no limitation in social interactions with the

7

public, coworkers, or supervisors," and "adapt to routine workplace changes," *id.* at 22, he erred.

The ALJ's assessment of the Plaintiff's mental RFC is therefore unsupported by substantial evidence. That error, in turn, undermined the relevance of the testimony of a vocational expert (VE) on which the ALJ relied to meet the Commissioner's Step 5 burden to prove that a person with the posited RFC could perform jobs existing in significant numbers in the national economy, warranting reversal and remand. *See id.* at 30-31; *Arocho v. Sec'y of Health & Hum. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (holding that the responses of a VE are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).[2]

### IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

---

[2] In light of this conclusion, I need not address the Plaintiff's further argument that the ALJ erred in failing to discuss or exhibit a vocational affidavit. *See* Statement of Errors at 11-13.

Dated: March 1, 2023.

/s/ Karen Frink Wolf
United States Magistrate Judge